The **LAITRAM CORPORATION,**
Plaintiff–Appellant,

v.

**NEC CORPORATION, NEC Information Systems, Inc., and Sears, Roebuck and Company, Defendants–Appellees.**

No. 91–1108.

United States Court of Appeals,
Federal Circuit.

Dec. 31, 1991.

Suggestion for Rehearing In Banc
Declined Jan. 30, 1992.

---

5. Brennan was awarded a patent although the PTO found that Brennan was not the first inventor of the subject matter.

Timothy J. Malloy, of McAndrews, Held & Malloy, Chicago, Ill., argued for plaintiff-appellant. With him on the brief were Lawrence M. Jarvis, Gregory J. Vogler, and Jean Dudek Kuelper. Of counsel were Phillip A. Wittmann and Steven Usdin, of Stone, Pigman, Walther, Wittmann & Hutchinson, New Orleans, La., and Barry L. LaCour and Mark T. Drapanas, of The Laitram Corp., Harahan, La.

John M. Calimafde, of Hopgood, Calimafde, Kalil, Blaustein & Judlowe, New York City, argued for defendants-appellees. With him on the brief were Marvin N. Gordon, Charles Quinn and David H. Kagan. Of counsel was James D. McMichael, of Liskow & Lewis, New Orleans, La.

Before NEWMAN, ARCHER and RADER, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

In a suit for patent infringement filed by The Laitram Corporation against NEC Corporation, NEC Information Systems, Inc., and Sears, Roebuck and Company (collectively "NEC"), the grant of partial summary judgment in favor of NEC was certified for immediate appeal.[1]

The question raised is whether amendments made to patent claims during reexamination of the patent are substantive as a matter of law, when the amendments are made following a rejection based on prior art. We conclude that there is no *per se*

rule. It must be determined whether the claims are substantively changed, on consideration of the facts of the case.

Accordingly, the grant of partial summary judgment is reversed. The case is remanded for further proceedings.

*Background*

United States Patent No. 3,952,311 (the '311 patent) entitled "Electro–Optical Printing System", inventor James M. Lapeyre, was issued on April 20, 1976 and is assigned to The Laitram Corporation. The patent is directed to high speed electro-optical printing, whereby printed characters are produced on a sheet of radiation sensitive material. As described in the specification, radiation emitting elements are arrayed in a straight line and the radiation sensitive material is moved past the emitter array at constant speed, in a direction perpendicular to the line of the array. As the radiation sensitive material moves past the array, certain of the emitters are activated so as to produce type quality alpha-numeric characters.

A request for reexamination was filed by a third party, not involved in this suit. The patent examiner determined that the request raised a substantial new question of patentability[2] as to claims 1 and 2, the only claims of the original '311 patent. During the ensuing reexamination the examiner rejected claims 1 and 2 on the ground of obviousness, 35 U.S.C. § 103, in view of certain newly cited references. Claim 2 was also rejected as anticipated, 35 U.S.C. § 102(b), by one of the newly cited references.

Laitram filed a response in which it amended claims 1 and 2, and added new claims 3 through 27 containing additional limitations. Claims 1 and 2 follow, wherein the words added during reexamination are

---

1. *Laitram Corp. v. NEC Corp.*, 17 USPQ2d 1407, 1990 WL 270785 (E.D.La.1990), *certification ordered*, No. 89–1571 (October 11, 1990), *petition for permission to appeal granted*, 930 F.2d 37 (Fed.Cir.1990). Jurisdiction in this court is pursuant to 28 U.S.C. § 1292(c)(1).

2. **35 U.S.C. § 303.**

(a) Within three months following the filing of a request for reexamination under the provisions of section 302 of this title, the Commissioner will determine whether a substantial new question of patentability affecting any claim of the patent concerned is raised by the request, with or without consideration of other patents or printed publications....

italicized and the words deleted are shown in brackets:

1. An electro-optical printing apparatus for printing *type quality* alpha-numeric characters *at high speed* on a surface of a photosensitive recording material, said apparatus comprising:

a plurality of *rapidly reacting* radiation emitters each being capable of emitting radiation at wavelengths to which said surface is sensitive, said emitters being disposed in an array along a substantially straight line, said array being a plurality of rows of said radiation emitters;

means for moving said recording material *in a single direction substantially perpendicular to said straight line* with its surface adjacent said array, and at a substantially constant speed relative to said array and;

means for selectively activating each of said emitters for predetermined periods of time, and

means for coordinating the predetermined period of time in which each of the said plurality of emitters are activated with said constant relative speed of said recording material so that the radiation emitted by said emitters will be recorded on selected areas of said recording surface in the form of an alpha-numeric image,

each of said emitters being positioned to irradiate a different area of said recording surface, the different areas of said surface irradiated by each of the said emitters being arranged in an overlapping relationship with one another *and said plurality of emitters being of sufficient number to print said type quality alpha-numeric characters.*

2. A method of electro-optically printing *type quality* alpha-numeric characters *at high speed* on the recording surface of a photosensitive material, said method comprising the steps of:

arranging a plurality of *rapidly reacting* radiation emitters in a straight line array, each of the said emitters being capable of emitting radiation at wavelengths to which said photosensitive material is sensitive,

selectively energizing for predetermined periods of time each of the said emitters,

transmitting the emitted radiation from each of the said emitters to a different area on said surface,

providing relative movement *along a single coordinate substantially perpendicular to said array* at substantially constant speed between said recording surface and said emitters, and

coordinating the predetermined periods of time in which each of said plurality of emitters [are] *is* selectively energized with said constant speed of said relative movement between said emitters and recording surface so that alpha-numeric character images are recorded on said recording by exposure of said selected [ares] *areas* of said recording surface by said emitted radiation, said step of coordinating including the steps of synchronously generating a first data signal which programs the order [to] *of* energization of said emitters and a second data signal which determines the duration of the energization period of said emitters, and employing said first and second data signals to effect energization of said emitters so as to record said alpha-numeric character images *of said type quality at said high speed.*

Laitram filed a detailed analysis of each of claims 1 through 27 in light of the newly cited references, pointing out how the teachings of the references differed from the '311 invention. For example, Laitram explained that the movement of the paper as shown in the newly cited Baylis reference was in more than one direction relative to the emitter array, whereas the '311 specification made clear that the movement of the paper in the claimed invention was along a single perpendicular coordinate. Laitram presented additional arguments as to perceived deficiencies in other references.

The examiner allowed claims 1 and 2 as amended and claims 3 through 27 as added, giving the following reason:

> The prior art fails to teach an electro-optical printing apparatus for printing type quality characters including a plurality of emitters disposed in an array along a substantially straight line[,] a recording surface moved in a single direction at a substantially constant speed in a direction substantially perpendicular to the line of the emitter array[,] and means for selectively coordinating the activation of the emitters for predetermined periods of time in combination with the other elements recited in the claims.

Laitram argued to the district court that the amendment of claims 1 and 2 to include the added words was done to "more particularly define" the invention, that the added words stated inherent details and did not change the scope of the claims. The district court did not decide the question of whether the changes to claims 1 and 2 were in fact substantive, or discuss the scope of these claims before and after amendment. The court ruled summarily that any amendment to overcome a rejection on prior art is substantive as a matter of law.

### The Certified Question

Reexamination provides a mechanism for enabling the Patent and Trademark Office to review and correct an initial examination.[3] Thus reexamination is conducted afresh, without the burdens and presumptions that accompany litigation of an issued patent. *In re Etter*, 756 F.2d 852, 855–59, 225 USPQ 1, 3–6 (Fed.Cir.) (*en banc*), *cert. denied*, 474 U.S. 828, 106 S.Ct. 88, 88 L.Ed.2d 72 (1985). The Commissioner, having determined that a substantial new question of patentability is raised, may order reexamination of the patent, 35 U.S.C. § 304, and conduct reexamination proceedings using the same procedures as in initial examination, 35 U.S.C. § 305.

The issue certified on this appeal requires determination of whether, as a matter of law, a claim is deemed substantively changed when it is amended on reexamination following a rejection based on prior art. Recovery of damages for an asserted infringement during the period between the date of issuance of the original patent and the date of issuance of the reexamined patent requires that the original and reexamined claims be "identical".[4] Whether claims are "identical" when some of the words are changed has received substantial attention in this court's precedent.

In *Seattle Box Co. v. Industrial Crating & Packing, Inc.*, 731 F.2d 818, 827–28, 221 USPQ 568, 575 (Fed.Cir.1984), this court held that the word "identical" in § 252 "means, *at most*, 'without substantive change'" (emphasis in original). In *Seattle Box* the court applied that definition to the reissued claim and concluded that the limitation "substantially equal to or greater than" was a substantive change from the limitation "greater than" in the

---

**3.** The purposes of reexamination include to "permit efficient resolution of questions about the validity of issued patents without recourse to expensive and lengthy infringement litigation [and to] ... promote industrial innovation by assuring the kind of certainty about patent validity which is a necessary ingredient of sound investment decisions." H.R.Rep. No. 1307, 96th Cong., 2d Sess. 4, *reprinted in* 1980 U.S.Code Cong. & Admin.News 6460, 6463; *see generally Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 601–02, 225 USPQ 243, 248–49 (Fed.Cir.1985).

**4.** When the reexamined claim is not legally identical to the original claim, 35 U.S.C. §§ 252 and 307(b) provide certain safeguards:

   **35 U.S.C. § 307(b)** Any proposed amended or new claim determined to be patentable and incorporated into a patent following a reexamination proceeding will have the same effect as that specified in section 252 of this title for reissued patents on the right of any person who made, purchased, or used anything patented by such proposed amended or new claim, ... prior to issuance of a [reexamination] certificate....

   **35 U.S.C. § 252** ... every reissued patent shall have the same effect and operation in law, on the trial of actions for causes thereafter arising, as if the same had been originally granted in such amended form, but in so far as the claims of the original and reissued patents are identical, such surrender shall not affect any action then pending nor abate any cause of action then existing, and the reissued patent, to the extent that its claims are identical with the original patent, shall constitute a continuation thereof and have effect continuously from the date of the original patent....

original claim. The court observed that this change was "not a matter of a mere clarification of language to make specific what was always implicit or inherent." *Id.* at 828, 221 USPQ at 575.

"Identical" does not mean verbatim. In *Kaufman Co. v. Lantech, Inc.*, 807 F.2d 970, 1 USPQ2d 1202 (Fed.Cir.1986) the court rejected the argument that any amendment to the claims during reexamination is substantive. Referring to the legislative history of reexamination, the court remarked that no more rigorous standard was intended for reexamined claims than for reissued claims, wherein precedent had established that "identical" in § 252 means without substantive change in the scope of the claims. *Id.* at 978, 1 USPQ2d at 1208. The court determined that the claim changes merely clarified the invention, without substantive change in the meaning or scope of the claim.

In *Slimfold Manufacturing Co. v. Kinkead Industries, Inc.*, 810 F.2d 1113, 1 USPQ2d 1563 (Fed.Cir.1987) the court, construing an amendment made following a rejection based on 35 U.S.C. § 112, remarked that "[c]laims are not interpreted in a vacuum, but are part of and are read in light of the specification." *Id.* at 1116, 1 USPQ2d at 1566. The court stated that:

> The standard applied is that of whether a particular change to the claims is substantive, such that the scope of the claims is no longer substantially identical. It is a reasonable standard, for it implements the purpose of the statute while enabling application "to the facts in any given case that justice will be done."

*Id.* (quoting *In re Willingham*, 282 F.2d 353, 354–55, 127 USPQ 211, 214, 48 CCPA 727 (1960)). Again in *Tennant Co. v. Hako Minuteman, Inc.*, 878 F.2d 1413, 1417, 11 USPQ2d 1303, 1306–07 (Fed.Cir.1989) the court held that a claim made more definite by adding a term from the specification, without change in scope, is not substantively changed, and the claims are "legally identical".

In *Tillotson, Ltd. v. Walbro Corp.*, 831 F.2d 1033, 1036–39, 4 USPQ2d 1450, 1452–54 (Fed.Cir.1987), the court held that the reissue claim could not be automatically construed as broadened by omission of a claim term; the court held that the claims must be construed in light of the specification, prosecution history, prior art, and other pertinent information, which in that case included extrinsic evidence of industry practice. The court held that this claim construction raised disputed issues of material fact, such that summary judgment was improper.

■ NEC argues that these rulings should be limited to changes made to overcome rejections under § 112, and that the principles of prosecution history estoppel impose a *per se* restraint when claim changes are made following rejections on prior art. Precedent does not support such a rule. NEC relies on cases where prosecution history estoppel limited application of the doctrine of equivalents, *inter alia, Diversitech Corp. v. Century Steps, Inc.*, 850 F.2d 675, 681, 7 USPQ2d 1315, 1320 (Fed.Cir.1988); *Townsend Engineering Co. v. HiTech Co., Ltd.*, 829 F.2d 1086, 1091, 4 USPQ2d 1136, 1140 (Fed.Cir.1987); and *Mannesmann Demag Corp. v. Engineered Metal Products Co.*, 793 F.2d 1279, 1285, 230 USPQ 45, 49 (Fed.Cir.1986). None of the cases cited supports the *per se* rule urged by NEC, for each was decided on its facts, taking into account relevant evidence of the specification, prosecution history, prior art, and any other pertinent circumstances.

A rejection on prior art during the course of reexamination is not, of course, a PTO decision of unpatentability; it is part of the prosecution history, and its significance depends on the particular facts and circumstances. The reasons for a change in claim language must be considered in determining its estoppel effect. *See, e.g., Andrew Corp. v. Gabriel Electronics, Inc.*, 847 F.2d 819, 825, 6 USPQ2d 2010, 2016 (Fed. Cir.), *cert. denied*, 488 U.S. 927, 109 S.Ct. 312, 102 L.Ed.2d 330 (1988) ("The purpose of an amendment must be taken into account when considering prosecution history estoppel."); *Hi–Life Products, Inc. v. American National Water–Mattress*

*Corp.*, 842 F.2d 323, 325, 6 USPQ2d 1132, 1134 (Fed.Cir.1988) (" 'a close examination must be made as to, not only what was surrendered, but also the reason for such a surrender' ") (quoting *Bayer Aktiengesellschaft v. Duphar International Research B.V.*, 738 F.2d 1237, 1243, 222 USPQ 649, 653 (Fed.Cir.1984)); *Hughes Aircraft Co. v. United States*, 717 F.2d 1351, 1363, 219 USPQ 473, 481 (Fed.Cir.1983) (amendment may have "limiting effect within a spectrum ranging from great to small to zero"). Determination of the presence and scope of any estoppel due to amendment requires consideration of the particular prior art involved in the rejection. *LaBounty Manufacturing, Inc. v. United States International Trade Commission*, 867 F.2d 1572, 1576–77, 9 USPQ2d 1995, 1998–99 (Fed.Cir. 1989).

In harmony with the court's clear rejection of the proposition that any amendment to a claim acts as a *per se* estoppel when the issue is the doctrine of equivalents, *Hi-Life Products*, 842 F.2d at 325, 6 USPQ2d at 1134, we conclude that the proposition of *per se* estoppel, when the issue is substantive change on reexamination, must also be rejected.

The district court relied on *Scripps Clinic & Research Foundation v. Genentech, Inc.*, 678 F.Supp. 1429, 1433, 6 USPQ2d 1018, 1021 (N.D.Cal.1988). The district court in *Scripps* did "consider the circumstances" of the prior art, the specification, and the amendments, although stating, as quoted by the district court herein, that "[w]here the amendment is made to overcome the Examiner's rejection of claims as unpatentable, it is a substantive change." *Scripps, supra.* This court reversed the district court's grant of summary judgment on other grounds, and did not discuss this issue. *Scripps Clinic & Research Foundation v. Genentech, Inc.*, 927 F.2d 1565, 18 USPQ2d 1001 (Fed.Cir.1991) (aff'g in part, rev'g in part).

The district court herein also relied on an opinion of the International Trade Commission, in *In re Certain Apparatus for Flow Injection Analysis*, 226 USPQ 236 (United States Int'l Trade Comm.1984), *appeal dismissed sub nom. Block v. United States Int'l Trade Comm.*, 777 F.2d 1568, 228 USPQ 37 (Fed.Cir.1985) (vacating the Administrative Law Judge's determination that claims of an original and reexamined patent were "identical"). The Commission had held that amendment following a rejection on prior art "clearly implies a change in coverage, i.e., a substantive change". 226 USPQ at 239. The Federal Circuit, denying interlocutory appeal, held that the Commission's decision was not a final determination on the merits, and stated that the petitioner was not bound by the Commission's opinion. *Block*, 777 F.2d at 1571–72, 228 USPQ at 39.

NEC relies on several cases in which courts had held that claim changes made on reexamination or reissue were indeed substantive. None of these cases, however, held that such changes were *per se* substantive, without analysis of their substance. All were based on a review of the merits of the issue. *E.g., Fortel Corp. v. Phone–Mate, Inc.*, 825 F.2d 1577, 1581, 3 USPQ2d 1771, 1774 (Fed.Cir.1987) (changes were found substantive, the court observing that the patentee conceded that reexamined claims were "slightly broader" than original claims); *General Electric Co. v. Hoechst Celanese Corp.*, 698 F.Supp. 1181, 1185, 12 USPQ2d 1517, 1521 (D.Del.1988) (patentee admitted that change of "comprising" to "consisting essentially of" was a narrowing of the claim, the district court holding that this narrowing, to avoid prior art, was a substantive change); *Johnston v. Textron, Inc.*, 579 F.Supp. 783, 793, 222 USPQ 160, 168 (D.R.I.1984), *aff'd*, 758 F.2d 666 (Fed.Cir.1984) (Table) (district court found "whole structural concept ... significantly altered" in reissue claims, and that the changes were not mere clarification, or inherent, or correction of a mistake.) These cases, and their reasoning, do not support the *per se* rule pressed by NEC.

We thus answer the certified question as follows: When claims are amended during reexamination following a rejection based on prior art, the claims are not deemed substantively changed as a matter of law. There is no *per se* rule. To determine whether a claim change is substantive it is

necessary to analyze the claims of the original and the reexamined patents in light of the particular facts, including the prior art, the prosecution history, other claims, and any other pertinent information.

### Summary Judgment

This matter was decided on NEC's motion for summary judgment. On such motion the judgment sought shall be rendered when the movant has shown that there exists no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). The burden of establishing entitlement to summary judgment is with the movant, with due consideration to the burdens and presumptions at trial. *H.H. Robertson Co. v. United Steel Deck, Inc.*, 820 F.2d 384, 388, 2 USPQ2d 1926, 1928 (Fed. Cir.1987). When a sufficiently supported motion has been submitted, the burden of coming forward with evidence of the presence of a material factual dispute shifts to the non-movant. *Scripps Clinic*, 927 F.2d at 1571, 18 USPQ2d at 1005. NEC argued that it was entitled to judgment as a matter of law, based on the undisputed fact that amendments were made following prior art rejections. Although this *per se* rule has not been sustained, we review to determine whether there were disputed issues of material fact to preclude summary disposition, or whether the case could indeed have been decided summarily.

■ Laitram stated that the amendments that it made during reexamination of claims 1 and 2 merely made explicit certain details that were inherent in those claims as originally granted. In support Laitram submitted the declaration of LeRoy Prohofsky, an engineer. This declaration was directed to the factual details of the claim amendments, and Mr. Prohofsky's opinion of their significance. For example, he pointed to where the specification of the '311 patent described the invention as a "high speed" printer, stating that the "specification teaches very specifically that the whole point of the invention is to pro-vide a 'high speed' electro-optical printing apparatus which, when printing alpha-numeric characters, prints characters of 'type' quality". He quoted extensively from the '311 patent document.

Mr. Prohofsky made similar averments with respect to the claim amendment of the "type quality" characters, pointing out that this was the quality to which the invention was directed. He showed where in the specification the radiation emitters were described as designed "particularly for high speed applications". With respect to the "single direction substantially perpendicular" term, he stated that the only direction of movement of the radiation sensitive material described in the specification was movement "substantially perpendicular" to the line of the emitter array. He addressed the "means plus function" form of some of the claim clauses, and pointed to the corresponding structure described in the specification. Mr. Prohofsky concluded that a person of ordinary skill would view the "type quality", "high speed", "rapidly reacting", and "substantially perpendicular" limitations that were added to claims 1 and 2 during reexamination as inherent limitations in the claims as originally issued and that claims 1 and 2 as reexamined were substantially identical in scope to their original counterparts.

The Prohofsky declaration was submitted in opposition to NEC's motion for summary judgment. NEC offered no evidence or expert opinion to contradict that of Mr. Prohofsky. On motion for summary judgment, the proffer of extrinsic evidence including testimony on the meaning, origins, and significance of claim terms should not be ignored. The technology here involves electro-mechanical devices of some complexity. Understanding of the '311 patent specification and the various cited references may benefit from technological guidance. *See Moeller v. Ionetics, Inc.*, 794 F.2d 653, 657, 229 USPQ 992, 995 (Fed.Cir.1986) ("In a patent case involving complex scientific principles, it is particularly helpful to see how those skilled in the art would interpret the claim.")

**1364**

Laitram effectively showed that material factual premises underlying the interpretation of claims 1 and 2 are in genuine dispute. A factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-movant. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. Thus, although the interpretation of claims is a question of law, when it is necessary to resolve disputed issues of fact in the course of interpreting the claims, summary disposition is improper. *Continental Can Co. U.S.A. v. Monsanto Co.,* 948 F.2d 1264, 1267, 20 USPQ2d 1746, 1749–50 (Fed.Cir.1991); *Tillotson,* 831 F.2d at 1039, 4 USPQ2d at 1454; *Howes v. Medical Components, Inc.,* 814 F.2d 638, 647, 2 USPQ2d 1271, 1276 (Fed.Cir.1987).

The question of substantive change of the claims was fairly placed at issue. The summary judgment is reversed, and the cause remanded for further proceedings.

### Costs

Taxable costs in favor of Laitram. Fed. R.App.P. 39.

REVERSED AND REMANDED.