Gladys Delbaugh BOYETT, Plaintiff,

v.

ST. MARTIN'S PRESS, INC., Defendant.

Gladys Delbaugh BOYETT, Plaintiff,

v.

DUTTON–SIGNET, INC., a division of Penguin Books U.S.A., Inc., Defendant.

Gladys Delbaugh BOYETT, Plaintiff,

v.

SIMON & SCHUSTER, INC., Defendant.

Gladys Delbaugh BOYETT, Plaintiff,

v.

BANTAM DOUBLEDAY DELL PUBLISHING GROUP, INC. and Dell Publishing, Defendants.

Nos. 94–325–CIV–FTM–21D to 94–328–CIV–FTM–21D.

United States District Court, M.D. Florida, Fort Myers Division.

Feb. 28, 1995.

---

**7.** *See* n. 3, *supra.*

Melville G. Brinson, III, Allen, Knudsen, DeBoest, Edwards & Roberts, P.A., Ft. Myers, FL, Mikolean Y. Morgan, James R. Longacre, John M. White, Longacre & White, Arlington, VA, for Gladys Delbaugh Boyett.

Stefan Vaughn Stein, Dominik, Stein, Saccocio, Reese, Colitz & Van Der Wall, Tampa, FL, Arne M. Olson, Olson & Hierl, Ltd., Chicago, IL, for St. Martin's Press, Inc.

Stefan Vaughn Stein, Dominik, Stein, Saccocio, Reese, Colitz & Van Der Wall, Tampa, FL, Arne M. Olson, Thomas J. Donovan, Olson & Hierl, Ltd., Chicago, IL, for Dutton–Signet, Inc., Bantam Doubleday Dell Pub. Group, Inc., Dell Pub.

Stefan Vaughn Stein, Dominik, Stein, Saccocio, Reese, Colitz & Van Der Wall, Tampa, FL, William A. Donovan, Ruby & Donovan, Naples, FL, Arne M. Olson, Olson & Hierl, Ltd., Chicago, IL, for Simon & Schuster, Inc.

## ORDER

NIMMONS, District Judge.

This cause comes before the Court on Defendants' Dispositive Motion to Dismiss and for Summary Judgment and Request for Oral Argument (Dkt. 12) and the Plaintiff's response (Dkt. 29) in opposition thereto, the Statement of Material Facts in Dispute (Dkt. 26), and the supporting declarations (Dkts. 25 & 27).

The Plaintiff's Complaint (Dkt. 1) alleges an action for patent infringement of U.S. Reissue No. 34,759, issued on October 18, 1994. The Plaintiff is the owner of both Reissue No. 34,759 and the original issue, No. 4,577,890, issued March 25, 1986. The Plaintiff alleges that she discovered that as an aid to readers in marking one's place in a book, a perforated, folded, detachable strip on the cover of a paperback book would be an ideal solution. After obtaining the original patent for her invention, she sought to license it to the publisher Bantam Doubleday Dell, which refused to license because it claimed that the patent was flawed. The Plaintiff then, more than two years after the original patent was granted, filed a reissue application in the United States Patent Office seeking to make several changes to the original patent. The Plaintiff alleges that since the Patent Office approved the reissue application, her bookmark invention has been utilized without license and her patent has been infringed repeatedly by the Defendants. Specifically, she alleges that they are presently infringing reissue claims 4, 5, 6, and 8 and claims 4 and 5 of the original patent issue.

The Defendants seek summary judgment on the basis that all of the asserted reissue patent claims (reissue claims 4, 5, 6, and 8) are invalid because they are broader in scope than the original claims in violation of 35 U.S.C. § 251. Alternatively, the Defendants move for summary judgment on the basis that the Defendants are not liable for infringement of the reissue patent claims prior to the date the reissue was granted, October 18, 1994, because none of the reissue patent claims is identical to any of the original patent claims. The Defendants also seek to dismiss, pursuant to Rule 12(b)(6), Fed. R.Civ.P., the Plaintiff's claim that the Defendants have infringed the original patent.

### SUMMARY JUDGMENT STANDARD

The Court will enter summary judgment only if the evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). On the issue of materiality, "the substantive law will identify which facts are material." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Material facts are those over which disputes "might affect the outcome of the suit under the governing law." Id. at 248, 106 S.Ct. at 2510.

The movant bears the burden of establishing the absence of dispute over material facts. Reynolds v. Bridgestone/Firestone, Inc., 989 F.2d 465, 469 (11th Cir.1993). Where, as here, the party opposing the summary judgment motion has the burden of proof at trial, the moving party must either point out to the Court specific portions of the record which show that the nonmoving party cannot prevail at trial, or introduce affirma-

tive evidence negating the opposing party's case. *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991). In determining whether the party seeking summary judgment has met its initial burden, the Court must view the evidence and factual inferences therefrom in the light most favorable to the opposing party. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 606 (11th Cir.1991). Any reasonable doubts about the facts are to be resolved in favor of the party opposing the motion for summary judgment. *Reynolds*, 989 F.2d at 469. If the moving party does not meet its burden, the motion for summary judgment will be denied. *Four Parcels of Real Property*, 941 F.2d at 1437. Where the moving party meets its initial burden, the burden shifts "to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark*, 929 F.2d at 608.

 In a motion to invalidate an existing, duly issued patent or a duly reissued patent, the burden on the moving party is a heavy one. Under 35 U.S.C. § 282, a patent is presumed valid, and the party challenging it has the burden of proving invalidity by clear and convincing evidence. *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1375 (Fed.Cir.1986), *cert. denied*, 480 U.S. 947, 107 S.Ct. 1606, 94 L.Ed.2d 792 (1987), *Interconnect Planning Corp. v. Feil*, 774 F.2d 1132, 1139 (Fed.Cir.1985). The "presumption remains intact and on the challenger throughout the litigation and the clear and convincing standard does not change." *Hybritech*, 802 F.2d at 1375. Further, upon reissue, the "burden of proving invalidity was made heavier." *Interconnect*, 774 F.2d at 1139, *citing Fromson v. Advance Offset Plate, Inc.*, 755 F.2d 1549, 1555 (Fed.Cir. 1985). Although the Patent Examiner's decision on an original or reissue application is not binding on the court, it is evidence the court must consider in determining whether the party asserting invalidity has met its burden. *Interconnect*, 774 F.2d at 1139.

## DISCUSSION

### I. *No Enlarged Reissue Patent*

 Title 35 U.S.C. § 251 provides, "No reissued patent shall be granted enlarging the scope of the claims of the original patent unless applied for within two years from the grant of the original patent." Further, section 252 of Title 35 provides:

The surrender of the original patent shall take effect upon the issue of the reissued patent, and every reissued patent shall have the same effect and operation in law, on the trial of actions for causes thereafter arising, as if the same had been originally granted in such amended form, but in so far as the claims of the original and reissued patents are identical, such surrender shall not affect any action then pending nor abate any cause of action then existing, and *the reissued patent, to the extent that its claims are identical with the original patent*, shall constitute a continuation thereof and have effect continuously from the date of the original patent.

35 U.S.C. § 252 (emph. added). The term "identical," as used in section 252, means "*at most*, 'without substantive change.'" *Westvaco Corp. v. Int'l Paper Co.*, 991 F.2d 735, 741 (Fed.Cir.1993), *quoting Seattle Box Co. v. Industrial Crating & Packing*, 731 F.2d 818, 827–28 (Fed.Cir.1984) (emph. in original). The determination of whether the scope of the reissue claim is identical with the scope of the original claim is a question of law. *Westvaco*, 991 F.2d at 741.

 A reissue claim is broader in scope than the original claim within the meaning of 35 U.S.C. § 251 if it contains "any conceivable apparatus or process which would not have infringed the original patent." *Tillotson, Ltd. v. Walbro Corp.*, 831 F.2d 1033, 1037 (Fed.Cir.1987). Thus, although the reissue claim may be narrower in some respects, it may also be impermissibly broader in scope if it contains a device that would not have infringed the original patent. Further, in applying 35 U.S.C. § 252, the scope of the claim must be identical; identical words need not be used. *Westvaco*, 991 F.2d at 741. Claim changes which "merely clarify" language already in the claims cannot be construed as a substantive change. *Id.* at 742. A "matter of mere clarification of language to make specific what was always implicit or inherent" indicates that the change is not

substantive. *Seattle Box,* 731 F.2d at 828. Additionally, claims must not be interpreted in a vacuum, *Slimfold Mfg. Co. Inc. v. Kinkead Indus., Inc.,* 810 F.2d 1113, 1116 (Fed. Cir.1987), but rather, must be interpreted "in light of the particular facts, including prior art, the prosecution history, other claims, and any other pertinent information." *Westvaco,* 991 F.2d at 742, *quoting Laitram Corp. v. NEC Corp.,* 952 F.2d 1357, 1362–63 (Fed.Cir. 1991).

## II. *Scope of the Original and Reissue Claims*

■ The Defendants argue that the reissue claims are broader than original claims 4 and 5 because original claims 4 and 5 called for two book markers and the reissue claims call for one book marker. They maintain that a claim that calls for one book marker is broader than one that calls for two book markers because it is infringed by a book having one, two, or more book markers, whereas a claim that calls for two book markers is only infringed by a book having at least two book markers. The Defendants assert that the language of the original claims and the history of the original claims indicate that the original patent called for two book markers. The Plaintiff, on the other hand, contends that the original claims encompassed one book marker, and that the claims were rewritten for the sole purpose of using consistent and accurate language without changing the scope of the claims. The Plaintiff asserts that the language of the original claims and the history of the original claims indicate that the original patent called for one book marker.

Upon a review of the record and the various arguments set forth by the Defendants, the Court finds that the Defendants have not met their burden of proving that the reissue patent is broader than the original patent by clear and convincing evidence. First, the Defendants contend that the original patent called for two book markers. Because original claims 1, 2, and 3 were directed to a dust shield for a hardback book, and because all of the accused products are paperback books, they maintain that claims 1, 2, and 3 are irrelevant. Second, the Defendants assert that the original patent's drawing of the paperback book in Figure 2 and the corresponding description [1] disclose the use of two book markers. Third, the Defendants assert that one of the proposed claims in the application for the original patent called for a single book marker, but that claim was rejected by the Patent Examiner as being unpatentable in view of the prior art. Fourth, the Defendants argue that the language of original claim 4 and its dependent claim 5 calls for two detachable book markers, and that original claims 4 and 5 can only be infringed by a paperback book having two book markers, one on "each side" of the cover.[2]

The Defendants next argue that the reissue patent broadened original claim 4. Defendants assert that whereas original claim 4 and its dependent claim 5 call for a paperback book having two book markers, i.e. one on "each side of the inturned portions," reissue claim 4 calls for a paperback book having one detachable strip to be used as a book marker. The Defendants dispute the Plaintiff's Declarations in support of the reissue application, which explain that the term "the inturned portions" was changed to "a fore edge" for "the sake of utilizing a readily recognized term." They assert that the Plaintiff should have advised the Patent Of-

---

1. The description in original patent 4,577,890, issued March 25, 1986, states:

 FIG. 2 illustrates the invention as embodied in a paper back book wherein the covers are formed of somewhat heavier material than the pages of the book, and the outer edges of the cover 30 of the book are folded inwardly as shown at 32 and are provided with book marker strips 34 along the inner edge, and wherein perforations 36 are provided to render the book marker strips 34 readily removable therefrom.

 Dkt. 14, Exh. B, Col. 2.

2. The Defendants quote the following language in original claim 4:

 ... the outer edges of the paper back covers being turned inwardly, and perforations along the inturned portions of the cover whereby a narrow strip may be detached from *each side* of the inturned portions and used as a book marker.

 Dkt. 14, p. 5 (emph. in Defendants' memorandum).

fice that this change omitted the requirement of original claim 4 that there be perforations on both fore edges (or inturned portions). Similarly, they assert that the Plaintiff's statement that the phrase "each side of the inturned portions" was changed to "the protective cover fore edge" for "the sake of establishing consistent terminology" was misleading. Defendants maintain that the Plaintiff should have advised the Patent Office that this change omitted the requirement of original claim 4 that there be a narrow strip which may be detached from each side of the fore edges (or inturned portions).

In opposition to the Defendants arguments, the Plaintiff first demonstrates that original claim 4[3] was defective under 35 U.S.C. § 112. Paragraph 2 of section 112 requires that the invention specification conclude "with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." 35 U.S.C. § 112. She asserts that because original claim 4 initially refers to a singular *cover* and then to "the outer edges of the paperback *covers* being turned inwardly," the claim reveals a lack of an antecedent basis for the word "covers." Further, the Plaintiff argues that because the term "cover" is again singular in the latter portion of original claim 4, original claim 4 must refer to one cover and a corresponding single strip which is to be detached and used as a single book marker. The Plaintiff also notes that the phrase "a narrow strip may be detached from each side of the inturned portions" lacks an antecedent basis anywhere in the original patent specification or claims. The Plaintiff thus asserts that original claim 4 should be interpreted as a single marker claim, in accordance with which the language refers to a detachment from the top and bottom sides of the inturned portion.

Additionally, the Plaintiff contends that original claim 5 depends on original claim 4, and argues that original claim 4 must therefore call for a single book marker. Claim 5 provides: "The invention defined in claim 4 wherein the perforations [to separate the book marker] are along the juncture of the paper back and the inturned portion thereof." Because the terms are in the singular form (*the* juncture, *the* inturned *portion*), the Plaintiff contends that claim 5 refers to a single book marker. The Plaintiff asserts that claim 5 cannot depend on the invention in claim 4 unless claim 4 also calls for only a single book marker. Further, the Plaintiff indicates that the cover to the initial patent application expressly directed claim 5 to the drawing in Figure 3,[4] which displays a single book marker. Dkt. 25, Exh. C, Attachment to 1984 Patent Application. The Plaintiff also asserts that originally patented claim 4 is rewritten from originally filed claim 8, and that claim 8 was previously characterized as covering all of the embodiments of Figures 2 and 3. Dkt. 25, Exh. C, Attachment to 1984 Patent Application.

The Plaintiff also notes that the language of the Abstract suggests that the original patent was directed to a single book marker. The Abstract of the original patent states:

When it is necessary to put down the book without finishing reading it in one sitting, it is desirable to have a book marker so that one's place can be continued without regression. Frequently a portion of a page of newspaper or magazine is torn off to provide a small book marker. By the present invention a narrow perforated

---

3. Original claim 4 states:
 4. In a book of the paper back type having a plurality of pages, a binding securing the edges of the pages together, a paper back cover of heavier material than the pages of the book secured to the binding and overlying both sides of the plurality of pages, the outer edges of the paper back covers being turned inwardly, and perforations along the inturned portions of the cover whereby a narrow strip may be detached from each side of the inturned portions and used as a book marker.
 Dkt. 14, Exh. B, Col. 2.

4. The original patent's description of Figure 3 provides for a single book marker. The description states:

 In the embodiment of FIG. 3, the outer edge of the paper back cover 30 of the book is perforated as shown at 40 in alignment with the outer edge of the book, and the cover is turned in a short distance to provide a narrow book marker strip 42 which may readily be removed and used as a book marker when the occasion of need therefor arises.
 Dkt. 14, Exh. B, Col. 2.

edge of the fold under flap of the book cover may be torn off from the dust shield or cover and used as a book marker to mark one's place in the book. As frequently happens, two parties in a family may be alternately reading the same book simultaneously. To accommodate this contingency the marginal edges on both sides of the dust shields can have narrow perforated sections which can be torn off to provide two book markers. Opposite sides of the dust shield can conveniently be colored differently so that it is possible to readily distinguish one's book marker from the other. Similarly, the outer edges of so-called paper backs can be turned in and perforated to render readily accessible book markers available.

Dkt. 14, Exh. B. From this Abstract, the Plaintiff contends that the original patent was directed to a single book marker and that the notion of two book markers was a secondary and additional concept.

Additionally, in regard to the Defendants' allegation that the Patent Examiner rejected the single book marker in the initial application on the basis of prior art, the Plaintiff notes that all of the original patent claims were rejected on the same indefiniteness and prior art bases. Further, the Examiner ultimately allowed original claim 1, which clearly describes a single book marker. The Plaintiff also indicates that during the reissue proceedings, the Patent Examiner rejected claim 3, which was explicitly directed to two book markers. The Examiner stated:

> In view of the clear teaching of the desirability of a removable book marker strip at both sides of the cover, it is held that it would have been obvious to one of ordinary skill in this art at the time this invention was made to provide the claimed removable strip at each side of the [ ] cover.

Dkt. 25, Exh. F. Based on this statement, the Plaintiff asserts that for the purpose of receiving the original patent, at which time there was no issue regarding the broadening of a claim within the meaning of 35 U.S.C. § 251, there was no patentable distinction between a book with single book marker and one with two book markers. The Plaintiff thus contends that the Defendants cannot establish that the two book marker feature was the basis for the original patent.

The Plaintiff next asserts that the scope of reissue claim 4, which is directed to a single removable strip located at the fore edge of the soft back cover, is consistent with the scope of original claim 4. The Plaintiff maintains that the additional language in the reissue patent was for the sole purpose of clarifying features already present or inherent in the claims. The terms "narrow strip" and "perforations," for example, were described so as to avoid any defective or indefinite language. Further, the Plaintiff asserts that it is "hornbook law" in the Patent Office and to any patent attorney that a reissue applied for more than two years after the original issue date cannot broaden a patent.

The Court finds that the documents and exhibits in the record, including references to prior art, the prosecution history, the initial application claims, and amendments to the original application and reissue claims indicate that reissue claim 4 is not invalid on the basis that it is broader than original claim 4. As the dispute between the parties indicates, the language of original claim 4 is unclear and subject to differing interpretations as to whether it calls for one or two book markers. The Court is persuaded that the amendments in reissue claim 4 are for the purpose of clarifying the ambiguities, inserting readily recognized terminology, and correcting phrases lacking prior antecedent bases in original claim 4. The ambiguities that were corrected are the type that the prior examiner and patent lawyer should have identified when the original patent was examined. Further, the Plaintiff's response to the March 15, 1985 Official Action, which discusses the prior art, utilizes both the terms "book marker" and "book markers." Dkt. 14, Exh. E. The utilization of both terms supports the finding that the original patent was directed to a single book marker and that the notion of two book markers was a secondary concept. Finally, although not binding, the Patent Examiner's decision to allow reissue claim 4 despite the passage of more than two years is an additional factor supporting a finding that the Defendants have not met

their burden by clear and convincing evidence.

### III. *Claim Identity and Intervening Rights*

The Defendants' motion requests that, if the Court finds that the scope of the reissue claims is not broader than the scope of the original claims, the Court alternatively find that the reissue claims are not "identical" within the meaning of 35 U.S.C. § 252.[5] The Defendants thus assert that they are protected by 35 U.S.C. § 252 and the doctrine of intervening rights from liability prior to the reissue date. Intervening rights is an equitable doctrine which applies unless the defendant infringed the valid claims in the original patent that are repeated in the reissue patent. *Seattle Box*, 731 F.2d at 830. If valid claims in the original patent appear unaltered in the reissue patent and are "identical" under section 252, the doctrine of intervening rights provides no protection to the alleged infringer; the reissued patent is treated as if granted on the date the original patent was granted. *Id.* at 830, 35 U.S.C. § 252.

As explained *supra*, the Federal Circuit has held that the term "identical" means "without substantive change." *Westvaco*, 991 F.2d at 741. Although the words of the claims need not be identical, the scope of the claims must be identical. *Id.* at 741. Claim changes that merely clarify language already in the claim are not substantive changes. *Seattle Box*, 731 F.2d at 828. However, to the extent that the reissue claims change the placement of components of the structure, the claim cannot be construed as a mere clarification, but must be construed as changing the scope of the original claim. *Westvaco*, 991 F.2d at 742.

A comparison of the original and reissue claims which the Plaintiff alleges that the Defendants violated shows that the claims are not identical. Because the Plaintiff's complaint alleges that the Defendants violated original claims 4 and 5 and reissue claims 4, 5, 6 and 8, and because reissue claims 6 and 8 have no corresponding claims in the original patent, the Court will compare claims 4 and 5. The first significant distinction is that reissue claim 4 requires the cover to be folded along the perforations, whereas original claim 4 did not require such a fold. Further, the Plaintiff's Supplemental Reissue Declaration indicates that the language "said protective cover is folded along said perforations with said narrow strip interposed between said plurality of pages and said protective cover" was "inserted to overcome any potential anticipation of the present invention in view of the teachings of Devlin (US # 732,-527)." Dkt. 14, Exh. H. Additionally, the Supplemental Reissue Declaration indicates that the language "said narrow strip has a width extending from the fore edge which is substantially less than a width, measured between the spine edge and the fore edge, of said soft-back book" was "inserted to overcome the teaching of the *Readers' Digest* publication of record." Because the Court finds that the changes in the reissue claims affect the structure of the invention and because the Plaintiff has represented that the changes were made in order to overcome prior art, the Court finds that the changes are substantial and the original and reissue claims are not identical. Moreover, reissue claim 5 is not identical to original claim 5 because it depends on the substantially changed reissue claim 4. Thus, the Defendants cannot be liable for infringing the reissue patent before October 18, 1994, the date the reissue patent was granted.

### IV. *Surrender of the Original Patent*

Section 252 of title 35 states that the original patent is surrendered upon the issue

---

5. 35 U.S.C. § 252 provides:

The surrender of the original patent shall take effect upon the issue of the reissued patent, and every reissued patent shall have the same effect and operation in law, on the trial of actions for causes thereafter arising, as if the same had been originally granted in such amended form, but in so far as the claims of the original and reissued patents are identical, such surrender shall not affect any action then pending nor abate any cause of action then existing, and the reissued patent, to the extent that its claims are identical with the original patent, shall constitute a continuation thereof and have effect continuously from the date of the original patent.
35 U.S.C. § 252.

of the reissued patent. 35 U.S.C. § 252. Therefore, an original patent cannot be infringed once a reissue patent is granted. *Seattle Box*, 731 F.2d at 827. Accordingly, the Plaintiff's claims that the Defendants have infringed her original patent must be dismissed.

Upon consideration of the foregoing, it is hereby **ORDERED and ADJUDGED** that Defendants' Dispositive Motion to Dismiss and for Summary Judgment and Request for Oral Argument (Dkt. 12) is **GRANTED in PART** and **DENIED in PART.** The motion is **GRANTED** insofar as the Defendants are entitled to: (1) summary judgment on the basis that they are not liable for infringement of the reissue patent claims prior to October 18, 1994, and (2) dismissal of the Plaintiff's claims that Defendants infringed the original patent. The motion is otherwise **DENIED.**

**DONE AND ORDERED.**