**BLOOM ENGINEERING COMPANY, INC., Plaintiff–Appellant,**

v.

**NORTH AMERICAN MANUFACTURING COMPANY, INC., Defendant–Appellee.**

No. 97–1139.

United States Court of Appeals, Federal Circuit.

Nov. 21, 1997.

**1248**

Russell D. Orkin, Webb Ziesenheim Bruening Logsdon Orkin & Hanson, P.C., Pittsburgh, PA, argued for plaintiff-appellant. With him on the brief were William H. Webb and John W. McIlvaine.

Timothy J. O'Hearn, Jones, Day, Reavis & Pogue, Cleveland, OH, argued for the defendant-appellee.

Before NEWMAN, MAYER, and SCHALL, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

Bloom Engineering Company appeals the judgment of the United States District Court for the Western District of Pennsylvania,[1] ruling that North American Manufacturing Company is not liable for infringement of Bloom's reexamined United States Patent No. 4,828,483 (the '483 patent) during the period before issuance of the reexamination certificate, because the claims were substantively changed during reexamination. We affirm the judgment.

### THE REEXAMINED PATENT

The subject of the '483 patent is an apparatus and method for repressing the formation of nitrous oxide emissions in paired regenerative burners that are used to ignite large industrial furnaces. The burners are paired so that when one burner is firing, the other is exhausting. A regenerative bed associated with each burner stores heat from the exhaust cycle and emits heat to heat the combustion air in the firing cycle. The burners may be fired directly into the furnace or fired into a radiant tube assembly, which then emits heat into the furnace.

The patented invention involves inducing a stream of hot flue gas from the burner in the exhaust mode, thereby vitiating preheated combustion air in the burner in the firing mode. A gas nozzle injects a high energy gas stream into the exhausting flue gas to induce a portion of the flue gas into an interburner duct coaxial with the nozzle. The induced portion of the flue gas is passed from the exhaust burner to the firing burner to vitiate the incoming combustion air by lowering its oxygen level. The reduced amount of oxygen in the combustion air results in reduced nitrous oxide emissions.

Bloom charged North American with infringement at three of North American's burner installations. During pre-trial proceedings, North American directed Bloom's attention to several patents that had not been cited during prosecution of the '483 patent. Included was British Patent No. 2,170,585, which describes a paired regenerative burner arrangement in which the injected gas stream includes combustion air. Bloom sought reexamination of the '483 patent in view of the British patent. In the course of the reexamination, original patent claims 2 and 13 were amended, and dependent claims 7 and 18 were incorporated into claims 2 and 13. No other claims are of concern.

Claim changes relevant to the issue of continuity and infringement are as follows, with bracketed words deleted and italicized words added during reexamination:

**Reexamined Claim 2**

A method of repressing NOx formation in a twinned pair of regenerative burners *communicating with a radiant tube extending into and exiting from a furnace and* of the type having heat regeneration beds associated therewith for alternatively withdrawing heat from a flue gas exiting [a furnace] *the radiant tube* and heating a combustion air stream being fed therethrough, comprising the steps of:

withdrawing a stream of hot flue gas from said [furnace] *radiant tube*;

injecting a stream of gas *separate from the combustion air stream* into said flue gas stream;

entraining a portion of said hot flue gas within said injecting gas stream;

passing said stream of injected gas and said entrained portion of hot flue gas to a burner chamber; and

vitiating a combustion process in said burner chamber with said portion of hot flue gas whereby NOx formation is repressed.

**Original Claim 7** [Cancelled during reexamination]

[The method according to claim 2 wherein the twinned pair of burners are of the radiant tube type.]

**Reexamined Claim 13**

An improved regenerative burner apparatus of the type comprising a pair of first and second spaced-apart burners, each of said burners comprising a chamber for mixing a fuel and a stream of preheated combustion air supplied from a regenerative heat storage bed associated with each of said burners, said burners adapted to operate cyclically wherein a first of said burners is in a firing mode directing hot gases into a furnace interior while a flue gas stream exits the furnace and passes through the second burner chamber and then passes to the regenerative heat storage bed associated therewith said second burner, wherein the improvement comprises [,]:

a *radiant tube extending into the furnace interior and communicating with each of the first and second burners*;

an interconnecting duct communicating with the chambers of said first and second burners; and

nozzle means adapted to inject a gas stream *separate from the combustion air stream* for inducing a flow of a portion of the hot flue gas exiting the [furnace] *radiant tube* into said interconnecting duct to enter the burner in the firing mode to vitiate the combustion air therein, whereby

NOx formation *within the radiant tube* is repressed.

**Original Claim 18** [Cancelled during reexamination]

[The apparatus of claim 13 wherein the burner pair is of the radiant tube type.]

The district court held that two of the changes in reexamined claims 2 and 13 were substantive: (1) the characterization of the injected stream of gas as "separate from the combustion air stream," and (2) the change of the term "furnace" to "radiant tube." The court held that the further description of the radiant tube in claims 2 and 13 was not substantive; this aspect is not disputed. Bloom had argued that the changes held to be substantive merely clarified the invention as set forth in the specification and the drawings, and that amended claims 2 and 13 were primarily original claims 7 and 18 written in independent form. The district court, unpersuaded, held that North American was not liable for infringement during the period before issuance of the reexamination certificate.

## DISCUSSION

■ The purpose of the reexamination procedure is to permit a patentee or other interested person to obtain review and if necessary correction of the claims resulting from the initial examination of the patent. Reexamination may entail changes in the claims, except that the claims can not be enlarged. *See* 35 U.S.C. § 305. The effect of a reexamined patent during the period before issuance of the reexamination certificate is governed by 35 U.S.C. § 307(b), which provides that the rules established in § 252 for reissued patents shall apply to reexamined patents. Sections 307 and 252 shield those who deem an adversely held patent to be invalid; if the patentee later cures the infirmity by reissue or reexamination, the making of substantive changes in the claims is treated as an irrebuttable presumption that the original claims were materially flawed. Thus the statute relieves those who may have infringed the original claims from liability during the period before the claims are validated.

Applying § 252, when the reexamined or reissued claims are identical to those of the original patent, they shall "have effect continuously from the date of the original patent." Unless a claim granted or confirmed upon reexamination is identical to an original claim, the patent can not be enforced against infringing activity that occurred before issuance of the reexamination certificate. "Identical" does not mean verbatim, but means at most without substantive change. *Seattle Box Co. v. Industrial Crating & Packing, Inc.*, 731 F.2d 818, 827–28, 221 USPQ 568, 575 (Fed.Cir.1984). In *Slimfold Mfg. Co. v. Kinkead Industries, Inc.*, 810 F.2d 1113, 1115, 1 USPQ2d 1563, 1565–66 (Fed.Cir.1987), the court explained that the scope of the claims must be the same after reissue, not that the same words must be used. Thus whether amendments made to overcome rejections based on prior art are substantive depends on the nature and scope of the amendments, with due consideration "to the facts in any given case that justice will be done." *Laitram Corp. v. NEC Corp.*, 952 F.2d 1357, 1361, 21 USPQ2d 1276, 1279 (Fed.Cir.1991) (quoting *In re Willingham*, 48 C.C.P.A. 727, 282 F.2d 353, 354–55, 127 USPQ 211, 214 (CCPA 1960)).

There is no absolute rule for determining whether an amended claim is legally identical to an original claim. An amendment that clarifies the text of the claim or makes it more definite without affecting its scope is generally viewed as identical for the purpose of § 252. *Kaufman Co. v. Lantech, Inc.*, 807 F.2d 970, 977, 1 USPQ2d 1202, 1207–08 (Fed.Cir.1986); *Tennant Co. v. Hako Minuteman, Inc.*, 878 F.2d 1413, 1417, 11 USPQ2d 1303, 1306–07 (Fed.Cir.1989). Determination of whether a claim change during reexamination is substantive requires analysis of the scope of the original and reexamined claims in light of the specification, with attention to the references that occasioned the reexamination, as well as the prosecution history and any other relevant information. *Laitram*, 952 F.2d at 1362–63, 21 USPQ2d at 1279–80. Thus we review whether the scope of the claims of the '483 patent in suit was substantively changed.

## A. The Change of "Furnace" to "Radiant Tube"

The district court held that the change from the term "furnace" in original claims 2 and 13 to "radiant tube," the only limitation in original dependent claims 7 and 18, constituted a substantive change. That is incorrect, for by this change Bloom did no more than restate original claims 7 and 18 in independent form. As stated in 35 U.S.C. § 112 ¶ 4, a dependent claim incorporates by reference all of the limitations of the claim from which it depends. Bloom achieved the same result by moving the "radiant tube" element from dependent claims 7 and 18 into their associated independent claims. Thus this change, standing alone, did not change the scope of original claims 7 and 18.

## B. The Addition of "Separate from the Combustion Air Stream"

The district court held that addition of the words "separate from the combustion air stream" was a substantive change in the scope of claims 2 and 13. Bloom argues that this change merely clarified the nature of the gas stream as described in the specification and drawings, and that original claims 2 and 13, correctly construed, were implicitly limited in the way that was made explicit by this amendment.

Bloom states that it was compelled to add these words to the claims because the reexamination examiner gave the "nozzle means" in original claim 13 an unduly broad construction, in accordance with examination practices that have been approved by this court, thereby obliging Bloom to amend the claims to state explicitly that the gas stream was separate from the combustion air stream. Bloom states that the separate gas steam was always an implicit limitation in the claims, for that is the only method of operation illustrated in the specification. Bloom argues that in accordance with § 112 ¶ 6 [2]

**2.** 35 U.S.C. § 112 ¶ 6. An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material,

the "nozzle means" was already so limited without its explicit recitation in claim 13, and thus its addition to claim 13 was not a substantive change in scope.

The district court did not agree with Bloom's analysis. Nor do we. The specification describes the injected gas stream as a "source, which may include air, POC [products of combustion] or gaseous fuel." A separate gas stream was not a necessary limitation as set forth in the patent, and was not included in original claims 2 and 13. The amendment narrowed the claims to exclude an injected gas stream that includes combustion air, and to require a separate combustion air stream. This change was necessary in order to distinguish Bloom's injected stream from that shown in the British patent. The British patent was newly cited prior art, and the claims were narrowed and limited in view of that patent. The district court correctly viewed this as a substantive change in claim scope.

The burner installations here charged with infringement were completed, sold, and installed before issuance of the reexamination certificate. Consequently, Bloom is not entitled to damages for infringement during the period before grant of the reexamined claims.

Costs to North American.

*AFFIRMED.*

or acts described in the specification and equivalents thereof.