**THE LAITRAM CORPORATION,**
**Plaintiff–Appellee,**

v.

**NEC CORPORATION and NEC**
**Information Systems, Inc.,**
**Defendants–Appellants.**

No. 98–1060.

United States Court of Appeals,
Federal Circuit.

Dec. 18, 1998.

Phillip A. Wittmann, Stone, Pigman, Walther, Wittmann & Hutchinson, L.L.P., of New Orleans, Louisiana, argued for plaintiff-appellee. With him on the brief were Steven W. Usdin and Stephanie D. Shuler. Of counsel on the brief were Timothy J. Malloy and Sharon A. Hwang, McAndrews, Held & Malloy, Ltd., of Chicago, Illinois.

John M. Calimafde, Hopgood, Calimafde, Kalil & Judlowe, of New York, New York, argued for defendants-appellants. With him on the brief was Marvin N. Gordon.

Before NEWMAN, MICHEL and LOURIE, Circuit Judges.

LOURIE, Circuit Judge.

NEC Corporation and NEC Information Systems, Inc. (collectively "NEC") appeal from the decision of the United States District Court for the Eastern District of Louisiana denying its motion for Judgment as a Matter of Law (JMOL) that reexamined claims 1 and 2 of Laitram's U.S. Patent 3,952,311 are not identical in scope to original claims 1 and 2. *See Laitram Corp. v. NEC Corp.*, Civ. A. No. 89–1571–N, 1997 WL 539890 (E.D.La. Sept. 2, 1997). Because we conclude that the scope of the claims was substantively changed by amendment during reexamination, we reverse.

## BACKGROUND

### A. *The Invention*

Laitram is the assignee of the '311 patent, which "relates to high speed, electro-optical printing systems, and particularly to systems employing radiation-sensitive image-recording mediums to produce records of information as type characters and/or in graphic form." *See* '311 patent, col. 1, ll. 5–9. Independent claim 1 is directed to such a printing apparatus and independent claim 2 is directed to a method for printing in this fashion. The parties dispute whether the scope of the original claims was substantively changed following several amendments made during the reexamination of the '311 patent. These amendments are emphasized in reexamined claims 1 and 2, with deletions in brackets:

1. An electro-optical printing apparatus for printing *type quality* alpha-numeric characters *at high speed* on a surface of photosensitive recording material, said apparatus comprising:

   a plurality of *rapidly reacting* radiation emitters each being capable of emitting radiation at wavelengths to which said surface is sensitive, said emitters being disposed in an array along a substantially straight line, said array being a plurality of rows of said radiation emitters;

   means for moving said recording material *in a single direction substantially perpendicular to said straight line* with its surface adjacent to said array, and at a substantially constant speed relative to said array and;

   means for selectively activating each of said emitters for predetermined periods of time, and

   means for coordinating the predetermined period of time in which each of the said plurality of emitters are activated with said constant relative speed of said recording material so that the radiation emitted by said emitters will be recorded on selected areas of said recording surface in the form of an alpha [sic]-numeric image,

   each of said emitters being positioned to irradiate a different area of said recording surface, the different areas of said surface irradiated by each of the said emitters being arranged in an overlapping relationship with one another *and said plurality of emitters being of sufficient number to print said type quality alpha-numeric characters.*

2. A method of electro-optically printing *type quality* alpha-numeric characters *at high speed* on the recording surface of a photosensitive material, said method comprising the steps of:

   arranging a plurality of *rapidly reacting* radiation emitters in a straight line

array, each of the said emitters being capable of emitting radiation at wavelengths to which said photosensitive material is sensitive,

selectively energizing for predetermined periods of time each of the said emitters,

transmitting the emitted radiation from each of the said emitters to a different area on said surface,

providing relative movement *along a single coordinate substantially perpendicular to said array* at substantially constant speed between said recording surface and said emitters, and

coordinating the predetermined periods of time in which each of said plurality of emitters [are] *is* selectively energized with said constant speed of said relative movement between said emitters and recording surface so that alpha-numeric character images are recorded on said recording surface by exposure of selected [ares] *area* of said recording surface by said emitted radiation, said step of coordinating including the steps of synchronously generating a first data signal which programs the order [to] *of* energization of said emitters and a second data signal which determines the duration of the energization period of said emitters, and employing said first and second data signals to effect energization of said emitters so as to record said alpha-numeric character images *of said type quality at said high speed.*

*See* '311 patent reexamination certificate, col. 1, ll. 22–67, col. 2, ll. 1–19 (emphasis and bracketing in original, paragraphing added). The added limitations generally address three aspects of the disclosed invention: speed, type quality, and direction of movement. Because our conclusion regarding claim identicality may be based on the type quality amendment alone, we limit our analysis to that limitation.

## B. *The District Court*

Laitram and NEC are before us for the fourth time,[1] and we commence by charting the pertinent aspects of this protracted litigation. On April 10, 1989, Laitram filed suit against NEC for infringement of the '311 patent. A third party initiated a reexamination proceeding, and the suit was stayed pending the outcome of the reexamination. The Patent and Trademark Office rejected apparatus claim 1 as obvious and method claim 2 as obvious and anticipated. Laitram subsequently gained allowance of these claims after incorporating the speed, type quality, and direction of movement limitations outlined above. Back in the district court, NEC then successfully moved for partial summary judgment that the scope of the claims had been substantively changed so that Laitram's damages would be limited to sales of NEC printers occurring *after* the issuance of the reexamined claims. *See* 35 U.S.C. §§ 252, 307(b) (1994). In *Laitram I* we reversed, holding that a claim amendment made during reexamination following a prior art rejection is not automatically to be regarded as a substantive change. *See Laitram I*, 952 F.2d at 1362, 21 USPQ2d at 1280. Thus, Laitram's amendments were not "per se" substantive changes. Following a trial after remand, the jury found that the claims were willfully infringed and that the original and reexamined claims were substantively identical. Pursuant to Fed.R.Civ.P. 50(b), NEC moved for JMOL on three issues. The district judge granted NEC's motion for JMOL of non-infringement, but denied NEC's motions for JMOL on willfulness and claim identicality, as both issues were now concluded to be moot. In *Laitram II* we reversed the district court's grant of JMOL of noninfringement, and remanded, instructing the district court "to reinstate the jury's verdict." *Laitram II*, 62 F.3d at 1395, 36 USPQ2d at 1211. The district court interpreted our mandate to require reinstatement of the entire jury verdict (including the verdicts concerning willfulness and claim identicality), and it denied NEC's Rule 60(b) motion requesting relief from the denial of its JMOL motions on willfulness and claim iden-

---

1. *See Laitram Corp. v. NEC Corp.*, 952 F.2d 1357, 21 USPQ2d 1276 (Fed.Cir.1991) ("Laitram I''); 62 F.3d 1388, 36 USPQ2d 1206 (Fed.Cir.1995) ("Laitram II''); 115 F.3d 947, 42 USPQ2d 1897 (Fed.Cir.1997) ("Laitram III'').

ticality as moot. Furthermore, the district court held that in spite of the jury's verdict of willful infringement, enhanced damages were not appropriate because the infringement and willfulness issues were both "close." The court also denied attorney fees to Laitram.

In *Laitram III* we again reversed and remanded, directing the court to consider NEC's JMOL motion on claim identicality, which had not been previously addressed by the district court. *See Laitram III,* 115 F.3d at 956, 42 USPQ2d at 1904. However, we held that the district court did not abuse its discretion in denying either enhanced damages or attorney fees, and we concluded that the motion for JMOL on willfulness was again rendered moot. We thus vacated the jury's verdict on willfulness and instructed the court to dismiss the JMOL motion on willfulness. *See id.* at 955–56, 42 USPQ2d at 1903–04.

On remand the district court denied NEC's motion for JMOL on claim identicality. The court concluded that the speed, type quality and direction of movement limitations added by amendment were "implicit" in the original claims and that therefore the amended claims were identical in scope to the original claims. *See* Order and Reasons at 12. As to the "type quality" limitation, the court noted that the original claims did not expressly state the quality of the image printed on the recording medium; rather, both claims simply state that "alpha-numeric characters" are printed. The court turned to the written description to interpret the meaning of the term "alphanumeric characters" and observed that the written description discloses a printing apparatus that generates "type character" images. The court also noted that the written description defines the term "type characters" as corresponding in size "to that of an ordinary typewriter and with type fonts typically employed therein." *See* '311 patent, col. 2, ll. 52–53. The court observed that Laitram's uncontroverted expert testimony revealed that at the time of the invention, a person having ordinary skill in the art would have deemed the term "type

character" to mean the quality of a mechanically produced, type-written image (*i.e.,* a "type quality" image). Moreover, the court observed that in numerous places, the written description discloses a printer that prints "type character" images. The court therefore concluded that the term "alphanumeric characters" means "type characters," and that because "type characters" are those of "type quality," the addition of the term "type quality" did not substantively change the scope of the original claims. NEC appealed the denial of its JMOL motion. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1) (1994).

## DISCUSSION

██ A patentee of a reexamined patent is entitled to infringement damages, *inter alia,* for the period between the date of issuance of the original claims and the date of issuance of the reexamined claims if the original and reexamined claims are "identical." *See* 35 U.S.C. §§ 252, 307(b) (1994); *Tennant Co. v. Hako Minuteman, Inc.,* 878 F.2d 1413, 1417, 11 USPQ2d 1303, 1306 (Fed. Cir.1989). Reexamined claims are "identical" to their original counterparts if they are "without substantive change." *Seattle Box Co. v. Industrial Crating & Packing,* 731 F.2d 818, 827–28, 221 USPQ 568, 575 (Fed. Cir.1984) (internal quotations omitted). Furthermore, in determining whether substantive changes have been made, we must discern whether the *scope* of the claims are identical, not merely whether different words are used. *See Slimfold Mfg. Co. v. Kinkead Indus.,* 810 F.2d 1113, 1115, 1 USPQ2d 1563, 1565 (Fed.Cir.1987). If substantive changes have been made to the original claims, the patentee is entitled to infringement damages only for the period following the issuance of the reexamination certificate. *See Bloom Eng'g Co. v. North Am. Mfg. Co.,* 129 F.3d 1247, 1249–50, 44 USPQ2d 1859, 1861 (Fed. Cir.1997).

██ "This court reviews without deference the district court's conclusion that the reexamined claims remained identical in scope."

*Minco, Inc. v. Combustion Eng'g, Inc.,* 95 F.3d 1109, 1115, 40 USPQ2d 1001, 1005 (Fed. Cir.1996) (citation omitted). This rule flows from the general principle that "the interpretation and construction of patent claims, which define the scope of the patentee's rights under the patent, is a matter of law, exclusively for the court." *See Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 970–71, 34 USPQ2d 1321, 1322 (Fed.Cir.1995) (en banc), *aff'd,* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577, 38 USPQ2d 1461 (1996); *see also Cybor v. FAS Tech., Inc.* 138 F.3d 1448, 1451, 46 USPQ2d 1169, 1171 (Fed.Cir. 1998) (en banc) (holding that claim construction is a purely legal question, reviewed by this court *de novo* ).

■ In *Laitram I* we held that a claim amendment made during reexamination following a prior art rejection is not *per se* a substantive change. *Laitram I,* 952 F.2d at 1362, 21 USPQ2d at 1280. Rather, "[t]o determine whether a claim change is substantive it is necessary to analyze the claims of the original and the reexamined patents in light of the particular facts, including the prior art, the prosecution history, other claims, and any other pertinent information." *Id.* at 1362–63, 952 F.2d 1357, 21 USPQ2d at 1280. This inquiry, however, is circumscribed by the well-established principle that a court may not import limitations from the written description into the claims. *See Electro Med. Sys. v. Cooper Life Sciences, Inc.,* 34 F.3d 1048, 1054, 32 USPQ2d 1017, 1021 (Fed.Cir.1994) ("[C]laims are not to be interpreted by adding limitations appearing only in the specification."). One key rationale for this rule is that

> [i]f everything in the specification were required to be read into the claims, or if structural claims were to be limited to devices operated precisely as a specification-described embodiment is operated, there would be no need for claims. Nor could an applicant, regardless of the prior art, claim more broadly than that embodiment.

*SRI Int'l v. Matsushita Elec. Corp. of Am.,* 775 F.2d 1107, 1121, 227 USPQ 577, 585 (Fed.Cir.1985) (en banc) (citations omitted). Thus, it is the *claims,* not the written description, which define the scope of the patent right. *See Novo Nordisk of N. Am. v. Genentech, Inc.,* 77 F.3d 1364, 1369, 37 USPQ2d 1773, 1777 (Fed.Cir.1996); *SRI Int'l,* 775 F.2d at 1121, 227 USPQ at 585.

■ NEC argues that a plain reading of the claims reveals that unlike original claims 1 and 2, reexamined claims 1 and 2 are limited to printing "type quality" alphanumeric characters and that, significantly, this limitation was added to the original claims in order to distinguish them from the prior art and thereby gain their allowance. NEC therefore concludes that the scope of the original claims has been substantively changed. Laitram responds that NEC is merely reasserting the "per se" argument that we rejected in *Laitram I.*

NEC also argues that in holding that the type quality limitation was implicitly contained in the original claims, the district court did more than use the written description to interpret claim language, but used it to read limitations into the claims. Laitram counters that the original claims, when construed in light of the written description, prosecution history, and language of the claims themselves, implicitly contain the "type quality" limitation. While Laitram acknowledges that the term "type quality" does not appear in the written description, Laitram asserts that the term "type *character*" appears repeatedly throughout the written description and that this term is defined as the quality of type "produced by mechanical systems." *See* '311 patent, col. 2, ll. 57–58. Laitram states that the written description indicates that in non-mechanical systems such as the claimed printing system, "type characters" are "substantially indistinguishable from mechanically formed characters" (*i.e.,* "type *quality* " characters). *See* '311 patent, col. 2, ll. 56–62. Since Laitram equates "alphanumeric characters" with "type characters" and "type characters" with "type *quality* characters," Laitram concludes that the original claims covered only alphanumeric characters of type quality.

We agree with NEC that the claims have been substantively changed. NEC correctly observes that a plain reading of the claims would indicate that the original and reexamined claims are of different scope: the original claims appear to cover a printer or method of printing which generates *any* quality of alphanumeric characters, while the amended claims seem to cover only a printing apparatus or method of printing which generates *"type quality"* alphanumeric characters. Most significantly, however, the addition of the "type quality" limitation, along with the other amendments, resulted in the allowance of claims that had been rejected in the reexamination proceeding over prior art; this is a highly influential piece of prosecution history. Although it is difficult to conceive of many situations in which the scope of a rejected claim that became allowable when amended is not substantively changed by the amendment, we arrive at our conclusion, not through any *"per se* rule," but in light of an overall examination of the written description, the prosecution history and the language of the respective claims. *See Laitram I,* 952 F.2d at 1363, 21 USPQ2d at 1280.

■ Laitram's argument that the scope of the claims has not been substantively changed is not persuasive, as it requires a highly strained and incorrect construction of the claims. Even assuming that Laitram is correct in arguing that "type characters" are defined as "characters of type quality," we do not see how one can equate "type characters" with "alphanumeric characters." The language of the claims indicates that "type quality alphanumeric characters" are simply a species of the genus "alphanumeric characters," and nothing in the written description persuades us otherwise. Laitram's argument is just an invitation for us to read a limitation into the original claims that is simply not there. As we explained in *Intervet* :

> [T]his court has consistently adhered to the proposition that courts cannot alter what the patentee has chosen to claim as his invention, that limitations appearing in the specification will not be read into claims, and that interpreting what is

*meant* by a word *in* a claim "is not to be confused with adding an extraneous limitation appearing in the specification, which is improper."

*Intervet Am., Inc. v. Kee–Vet Lab., Inc.,* 887 F.2d 1050, 1053, 12 USPQ2d 1474, 1476 (Fed. Cir. 1989) (citation omitted). Laitram essentially argues that because the term "type character" is used repeatedly throughout the written description, the "type quality" limitation is implicit in the original claims. This argument is incorrect; the mere repetition in the written description of a preferred aspect of a claimed invention does not limit the scope of an invention that is described in the claims in different and broader terms. *See Electro Med. Sys.,* 34 F.3d at 1054, 32 USPQ2d at 1021 ("[A]lthough the specifications [sic] may well indicate that certain embodiments are preferred, particular embodiments appearing in a specification will not be read into the claims when the claim language is broader than such embodiments."). Accordingly, we decline to read the "type quality" limitation into the original claims and agree with NEC that the district erred in doing so.

The prosecution history of the '311 patent further strengthens our conclusion that the scope of the claims was substantively changed. Laitram made the following statement in overcoming a § 103 obviousness rejection during reexamination:

> From the above it is seen that: claim 1 is allowable over the prior art since neither Baylis alone or in combination with either Kikuchi, Christopherson et al. or the Japanese patent shows or suggests the high speed electro-optical printer for printing *alpha-numeric characters of "type quality"* as specified in claim 1 . . . .

Joint App. at A1410 (emphasis added). Similarly, in overcoming the obviousness rejection of claim 2, Laitram argued that:

> Moreover, the combination of Innes and Kikuchi does not show how to modify Innes or Kikuchi to obtain the claimed method of printing *alpha-numeric characters of "type" quality.*

*Id.* at A1421 (emphasis added). These excerpts clearly illustrate what the language of the claims itself indicates, *viz.*, that the terms "alphanumeric characters" and "type quality alphanumeric characters" are not synonymous, but that the latter is a species of the former. Accordingly, the addition of the "type quality" limitation narrowed the original claims, substantively changing them.

We have considered the parties' remaining arguments, but find them unpersuasive.

## CONCLUSION

Based on our independent construction of the claim language, the written description, and the prosecution history, we conclude that the district court improperly read the "type quality" limitation into original claims 1 and 2. Thus, when Laitram added this limitation during reexamination, it narrowed the claims, thereby substantively changing their scope. Accordingly, Laitram is not entitled to infringement damages prior to the issuance of the reexamination certificate. The decision of the district court denying NEC's JMOL motion on this issue is therefore

*REVERSED.*