**Yoon Ja KIM, Plaintiff–Appellant,**

v.

**The EARTHGRAINS COMPANY,
Defendant–Appellee.**

No. 03–1047.

United States Court of Appeals,
Federal Circuit.

DECIDED: March 4, 2003.

Before MAYER, Chief Judge, LOURIE and CLEVENGER, Circuit Judges.

## DECISION

LOURIE, Circuit Judge.

Yoon Ja Kim appeals from the decision of the United States District Court for the Northern District of Illinois granting The Earthgrains Company summary judgment that U.S. Patent Re. 36,355 is invalid under 35 U.S.C. § 102(b). *Kim v. The Earthgrains Co.*, No. 01 C 3895, 2002 WL 1949235 (N.D.Ill. Aug. 22, 2002). We *reverse*.

## BACKGROUND

Ms. Kim filed U.S. Patent Application 08/147,995 on November 5, 1993. That application was directed to a "potassium bromate replacer," *viz.*, a composition consisting essentially of ascorbic acid, a food acid, an optional phosphate, and flour to serve as a slow-acting oxidant in yeast-leavened products. Kim filed U.S. Patent Application 08/308,617, which was a continuation-in-part of the '995 application, on September 19, 1994. That application issued as U.S. Patent 5,510,129 on April 23, 1996. The '129 patent was then reissued as U.S. Patent Re. 36,355 on October 26, 1999. The reissued patent contains ten claims directed to potassium bromate replacers and encompasses broader ranges of components of the invention, which were described in the '129 patent's specification but not included in the claims initially. Claim 5 of the reissued patent, which is the primary independent claim alleged to be infringed, reads as follows:

A *potassium bromate replacer* composition consisting essentially of, by weight:

(a) about 0.001 to 0.03 parts ascorbic acid as an oxidant per 100 parts flour,

(b) about 0.015 to 0.2 parts food acid per 100 parts flour, said food acid selected from the group consisting of acetic acid, citric acid, fumaric acid, lactic acid, malic acid, oxalic acid, phosphoric acid, succinic acid, tartaric acid, fruit juice, fruit juice concentrate, vinegar, wine, and mixtures thereof, and

(c) flour.

'355 patent, col. 8, ll. 47–57 (emphasis added).

Earthgrains manufactures and sells the accused Butter Top and D'Italiano brand breads, each of which contains ascorbic acid and vinegar (a food acid). The Butter Top and D'Italiano bread products were originally produced by Metz Baking Company but were acquired by Earthgrains when it merged with Metz in 2000.

On May 25, 2001, Kim, acting *pro se,* filed suit against Earthgrains in the U.S. District Court for the Northern District of Illinois, alleging that Earthgrains' sale of its Butter Top and D'Italiano breads infringes the '355 patent because each bread contains amounts of ascorbic acid and a food acid, *i.e.,* vinegar, falling within the ranges claimed in the '355 patent. Earthgrains moved for summary judgment that the '355 patent is invalid under 35 U.S.C. § 102(b) on the theory that the Butter Top and D'Italiano breads were on sale more than one year prior to Kim's earliest patent filing.

The district court granted Earthgrains' motion for summary judgment. First, the court determined that the earliest possible critical date for the '355 patent was November 5, 1992, one year before Kim's earliest filing date relating to the invention claimed in the '355 patent.[1] *Kim v. The*

*Earthgrains Co.,* No. 01 C 3895, 2002 WL 1949235 (N.D.Ill. Aug. 22, 2002). Secondly, the court found that Earthgrains provided unrebutted evidence, in the form of a declaration of Earthgrains' employee Donald G. Knott, that Butter Top bread was on sale prior to the critical date. *Id.* While noting that it was not clear from the record whether Butter Top bread contains amounts of ascorbic acid and vinegar that fall within the ranges claimed in the '355 patent, the court still held that Kim's allegation that it does contain those amounts and therefore infringes estopped her from arguing that its prior sale does not invalidate the patent. *Id.* (citing *Vanmoor v. Wal–Mart Stores, Inc.,* 201 F.3d 1363, 53 USPQ2d 1377 (Fed.Cir.2000)). Thus, the court concluded that Kim's factual allegation that Butter Top bread infringes the '355 patent combined with Earthgrains' unrebutted evidence that Butter Top bread was sold prior to the critical date rendered the '355 patent invalid under § 102(b). *Id.*

Kim timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## DISCUSSION

We review a district court's grant of summary judgment *de novo,* reapplying the same standard used by the district court. *Ethicon Endo–Surgery, Inc. v. U.S. Surgical Corp.,* 149 F.3d 1309, 1315, 47 USPQ2d 1272, 1275 (Fed.Cir.1998). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). "The evidence of the non-

---

1. The parties do not dispute the critical date, so we too will treat November 5, 1992 as the   critical date.

movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

On appeal, Kim argues that the district court erred in granting summary judgment that the '355 patent is invalid under § 102(b). Kim contends that the claimed invention was not "in public use or on sale" in the United States before the critical date of November 5, 1992 because Earthgrains' lack of research and development, Metz's earlier use of acetic acid in vinegar as a food acid, and a 1994 letter from the FDA demonstrate that potassium bromate was used in the Butter Top and D'Italiano breads in 1992. Thus, according to Kim, the alleged invalidating sales were not of "potassium bromate replacers." Moreover, Kim asserts that the Knott declaration, on which the district court relied in granting summary judgment to Earthgrains, contained "contradictory, inaccurate, and misleading statements." Kim also argues that the court misapplied § 102(b) by not considering the § 101 statutory class, *viz.,* composition of matter, to which the claimed "potassium bromate replacer" belongs.

Earthgrains responds that the district court correctly granted summary judgment that the '355 patent is invalid under § 102(b). Earthgrains argues that D'Italiano bread identical to the D'Italiano bread that Kim alleges infringes the '355 patent was on sale before the critical date.[2] Earthgrains adverts to the Knott declaration, which purports to establish that the 1992 D'Italiano bread and the accused D'Italiano bread have "virtually the same" ascorbic acid and vinegar contents, and argues

that Kim has never contested the fact that the pre-critical date D'Italiano bread and the accused D'Italiano bread have the same composition. Earthgrains further argues that the sale of D'Italiano bread before the critical date anticipates the '355 patent, regardless whether all of the advantages of the ascorbic acid and vinegar combination were understood at that time. Earthgrains also responds that § 102(b) applies to all classes of subject matter, including compositions of matter.

We agree with Kim that the court erred in granting summary judgment that the '355 patent is invalid under § 102(b). Because a patent issued by the U.S. Patent and Trademark Office is presumed to be valid, 35 U.S.C. § 282 (2000), Earthgrains has the burden of proving by clear and convincing evidence that the pre-critical date sale of Butter Top or D'Italiano bread anticipated the '355 patent, *see Vanmoor,* 201 F.3d at 1366, 53 USPQ2d at 1379. The district court correctly stated that that burden may be satisfied by Kim's allegation that the Butter Top and D'Italiano breads infringe the '355 patent. *See id.* However, such is the case only if the *same* Butter Top or D'Italiano bread that Kim accuses of infringing the '355 patent was on sale before the critical date, *see, e.g., id.; Evans Cooling Sys., Inc. v. Gen. Motors Corp.,* 125 F.3d 1448, 1451, 44 USPQ2d 1037, 1040 (Fed.Cir.1997), for it would be inconsistent for Kim to argue that the Butter Top and D'Italiano breads fall within the scope of the claims for infringement purposes but not for anticipation purposes, *see Lewmar Marine, Inc. v. Barient, Inc.,* 827 F.2d 744, 747, 3 USPQ2d 1766, 1768 (Fed.Cir.1987) ("That which would literally infringe if later in time

---

**2.** Earthgrains' brief focuses on the sale of D'Italiano bread as anticipating the '355 patent, mistakenly asserting that that was what

the district court did. The district court's opinion, however, relied solely on the sale of Butter Top bread in its § 102(b) analysis.

anticipates if earlier than the date of invention." (emphasis omitted)).

The district court, however, did not fully consider the differences in composition between the pre-critical date breads and the accused breads. In finding the '355 patent invalid under the on-sale bar of § 102(b), the district court relied only on the "unrebutted declaration of Mr. Knott that at least one loaf of the Butter Top bread brand was on sale before the critical date." Although there is no dispute that some breads labeled as Butter Top and D'Italiano were on sale before the critical date, a genuine issue of material fact exists as to whether those breads had the same compositions as the accused breads, especially with respect to the potassium bromate replacer limitation.

The Knott declaration does not establish that the same Butter Top and D'Italiano breads that Kim accuses of infringing the '355 patent were on sale in 1992. Although Earthgrains insists that the Knott declaration proves that the 1992 breads and the accused breads are identical because they contain essentially the same amounts of ascorbic acid and vinegar, Kim accuses Earthgrains of infringing the '355 patent by its sale of bread that contains the claimed amounts of ascorbic acid and vinegar and, importantly, no potassium bromate.[3] Neither Earthgrains' arguments nor the Knott declaration addresses whether the breads sold in 1992 contained potassium bromate. Nor does the Knott declaration support the district court's finding that both the 1992 and the current Butter Top breads have the same ascorbic acid and vinegar contents. According to the declaration, the 1992 formula for Butter Top bread included 0.130 parts vinegar (per 100 parts flour) and 0.000120 parts ascorbic acid, whereas the current formula for Butter Top bread includes 0.96 parts vinegar and 0.000115 parts ascorbic acid. Those figures indicate that the 1992 and current Butter Top breads contain different ascorbic acid and vinegar contents, and neither appears to fall literally within the scope of the '355 patent's claims.[4]

Moreover, we disagree with Earthgrains' repeated assertion that Kim has not contested the claim that the breads on sale in 1992 and the accused breads are the same. Although Kim has apparently not argued that the ascorbic acid and vinegar contents differ, she has sought to distinguish the breads in terms of their potassium bromate content. In her response to Earthgrains' statements of facts in dispute, which was filed with the district court on June 12, 2002, Kim argued that the 1992 Butter Top and D'Italiano recipes provided by Earthgrains list as ingredients yeast foods containing potassium bromate, *viz.*, Arkady D S and Arco Double Strength, respectively. The district court did not address that issue. In this appeal, Kim continues to maintain that, unlike the accused Butter Top and D'Italiano breads, the 1992 breads used yeast food containing potassium bromate. Thus, Kim argued to the trial court and argues to us now that the Butter Top and D'Italiano breads manufactured in 1992 have materially different compositions than the Butter Top and

---

3. Although Kim's complaint does not explicitly allege that the accused breads contain no potassium bromate, her arguments make clear that she believes them to infringe because they contain the claimed amounts of ascorbic acid and vinegar as a potassium bromate *replacer*.

4. We note, however, that the differences in ascorbic acid and vinegar contents for the D'Italiano breads were much less significant.

274

D'Italiano breads that she alleges infringe the '355 patent. Although we do not address the merits of Kim's arguments on this point, we find that her arguments of infringement and validity are not inconsistent: the accused breads containing no potassium bromate may infringe, while the breads on sale in 1992 and containing potassium bromate may not anticipate the '355 patent. We therefore conclude that her arguments are sufficient to preclude summary judgment of invalidity on the theory of estoppel invoked by the district court.

Drawing all justifiable inferences in favor of the nonmovant Kim, as we must when reviewing a grant of summary judgment, a genuine issue of material fact exists as to whether the breads that Kim alleges infringe the '355 patent have substantially the same composition in all material respects as the breads that were sold prior to the critical date. Accordingly, we reverse the district court's grant of summary judgment that the '355 patent is invalid and remand for further proceedings consistent with this opinion.

In their briefs, the parties make various other requests. We deny Earthgrains' request for costs. We also deny Kim's request that this case be reassigned to another district court judge.